# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| BARCLAY LOFTS LLC,<br><br>  Plaintiff/Counterclaim Defendant,<br><br>v.<br><br>PPG INDUSTRIES, INC., WCC INC., HYDRITE CHEMICAL CO., LUMIMOVE INC *doing business as* WPC TECHNOLOGIES INC., ABC INSURANCE COMPANY, DEF INSURANCE COMPANY, GHI INSURANCE COMPANY, JKL INSURANCE COMPANY, and MNO INSURANCE COMPANY<br><br>  Defendants/Crossclaim Defendants,<br><br>*and*<br><br>HYDRITE CHEMICAL CO. and PPG INDUSTRIES, INC.,<br><br>    Third-Party Plaintiffs,<br><br>v.<br><br>MD FIFTH WARD PROPERTIES INC. and MICHAEL DENESHA,<br><br>    Third-Party Defendants. | Case No. 20-CV-1694-JPS<br><br>**ORDER** |

On October 7, 2021, Barclay Lofts, LLC ("Barclay"), a real estate development company, filed a third amended complaint, ECF No. 58, which is the operative complaint in this matter. Barclay seeks recovery under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9607(a), and the Resources

Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6972(a) for costs, damages, and relief arising from the historical environmental contamination of a property that Barclay seeks to develop into a residential complex (the "Property"). This case comes before the Court on a joint motion to dismiss two third-party complaints, as well as a motion to compel. ECF Nos. 81, 91. For the reasons explained below, the Court will deny the joint motion to dismiss the third-party complaints and grant the motion to compel without fees.

1. BACKGROUND

   1.1 Defendants

Defendants are various historical owners of the Property that allegedly contributed to the Property's extensive environmental contamination. PPG Industries, Inc. ("PPG") ran a paint and pigment manufacturing plant on the Property between 1905 and 1975. Hydrite Chemical Co. ("Hydrite") purchased the plant in 1975 and operated a treatment, storage, and disposal operation in one of the plant's buildings from 1976 until 1986. Wayne Chemical Company ("WCC") is a now-defunct company that was spun off from Hydrite to deal with Hydrite's chrome operation. WCC thus operated on the Property with Hydrite from 1975 to 1985 to conduct chemical process, storage, and waste disposal.

In either 1985 or 1986, Hydrite wound down its operations and conveyed the Property to MD Fifth Ward Properties, Inc. ("MD Fifth Ward"). MD Fifth Ward was also alleged to be an alter ego of Hydrite, and it also engaged in chemical processing. Michael Denesha ("Denesha") (together with MD Fifth Ward, the "MD Defendants") served in various leadership roles for WCC and MD Fifth Ward from 1986 through 2012. Denesha is alleged to be the alter ego of both WCC and MD Fifth Ward.

In April 2006, MD Fifth Ward conducted environmental investigations of the Property, learned of contamination and a storage tank leak, and informed the Wisconsin Department of Natural Resources (the "WDNR"). MD Fifth Ward was unsuccessful in determining the full extent of the contamination and the leak. Accordingly, remediation was also unsuccessful. In 2015, MD Fifth Ward informed the WDNR that the site was "capped and used for industrial purposes." ECF No. 57 ¶ 49.

In 2012, amidst MD Fifth Ward's contamination investigation and remediation attempts, MD Fifth Ward divested its business operations to Lumimove, a company that resumed paint manufacturing operations on the Property until 2015. During this time, MD Fifth Ward still owned the Property. In 2017, Barclay's predecessor in interest, PPG GP LLC, purchased the Property from MD Fifth Ward and began working to remediate the Property for a mixed-use residential complex. On November 10, 2020, Barclay filed this lawsuit against Defendants seeking clean-up costs associated with Defendants' prior use of the Property.

On April 1, 2021, Barclay and the MD Defendants entered into a settlement agreement (the "Agreement") in which the MD Defendants assigned all of their insurance claims to Barclay Lofts. ECF No. 55-1 at 6. In exchange, Barclay agreed to release all claims against the MD Defendants and their various affiliates and indemnify the MD Defendants against claims for contribution. *Id.* at 7–8. The Agreement reads, in relevant part,

> **1.** **Purpose and Scope.** The purpose of this Agreement is to (A) fully and finally settle and resolve (i) Barclay Lofts' Claims against MD Fifth Ward and Denesha, including, but not limited to, Claims in any way relating to or arising from the Properties that were alleged or could have been alleged in the Lawsuit and (ii) MD Fifth Ward's and Denesha's respective Claims against Barclay Lofts, including, but not

limited to, Claims in any way relating to or arising from the Properties and/or that were alleged or could have been alleged in the Lawsuit; while also (B) preserving any Claims, including Insurance Claims (as defined herein) Barclay Lofts has or may acquire under this Agreement, against any Other Defendants, or insurers, including insurers of MD Fifth Ward and Denesha, who may be liable for the conduct alleged in the Lawsuit.

. . .

    2.3    "Insurance Claims" means any and all Claims against any insurer, asserted either directly or indirectly, that issued policies of insurance to any person, including MD Fifth Ward, Denesha and the Other Defendants, covering liability for the conduct alleged in the Lawsuit . . .

. . .

    3.1    MD Fifth Ward and Denesha each assign to Barclay Lofts all of their respective Insurance Claims to pursue insurance recovery under any liability insurance policy under which either is an insured and/or additional insured with respect to Barclay Lofts' Claims against MD Fifth Ward and Denesha in any way relating to or arising from the Properties, including, but not limited to, Claims that were alleged or could have been alleged in the Lawsuit.

. . .

    4.1    In consideration of the assignment under Section 3.1 of this Agreement and the other consideration set forth herein, Barclay Lofts does hereby fully and forever release, acquit and forever discharge MD Fifth Ward . . . and Denesha . . . from . . . all Claims . . . arising from the Properties. [T]his special release and covenant not to sue shall not affect Barclay Lofts' Claims . . . including but not limited to, its right to pursue the Insurance Claims assigned to Barclay Lofts under Section 3.1 of this Agreement, and Barclay Lofts expressly reserves all such rights.

. . .

**6. Indemnification and Judgment and Claim Reduction.**

6.1 Barclay Lofts shall fully and completely defend, indemnify and hold harmless the Denesha Released Parties,[1] in relation to Claims brought by Other Defendants that were alleged, are alleged, or could be alleged in the Lawsuit by the Other Defendants ("Indemnified Claims"). Indemnified Claims under this Section 6.1 of this Agreement shall include Claims by Other Defendants for contribution.

. . .

6.3 In the event that any Other Defendant in the Lawsuit obtains a judicial determination that it is entitled to obtain a sum certain from MD Fifth Ward and/or Denesha as a result of any of the Indemnified Claims, Barclay Lofts shall voluntarily reduce its judgment(s) or Claim(s) against, or settlement with, such Other Defendant to the extent necessary to eliminate such Indemnified Claim against MD Fifth Ward and/or Denesha. To ensure that such a reduction is accomplished, Denesha and/or Barclay Lofts as indemnitor of MD Fifth Ward and Denesha shall be entitled to assert this Section as a complete defense to any of the Indemnified Claims against MD Fifth Ward and/or Denesha for any such portion of the judgment or Indemnified Claim and shall be entitled to have the Court issue such orders as are necessary to effectuate the reduction to protect MD Fifth Ward and/or Denesha from any liability for the judgment or Indemnified Claim.

ECF No. 55-1.

On August 5, 2021, the Court dismissed the MD Defendants from the action because Barclay explained that it had settled with them pursuant to the Agreement, above. ECF No. 56. In so doing, the Court acknowledged that the MD Defendants' insurer would remain in the lawsuit and have an

---

[1] The "Denesha Released Parties" include MD Fifth Ward, *see* ECF No. 55-1 at 7 ("MD Fifth Ward and Denesha and the Persons so defined with respect to them being hereinafter collectively referred to as the 'Denesha Released Parties.'").

interest in defending any claims. *See id.* at 31–32; ECF No. 58 ¶ 26 (identifying GHI insurance company as MD Fifth Ward's insurer); ECF No. 54 at 3 ("Barclay expressly retained claims based on MD Fifth Ward's conduct to the extent other parties, such as . . . MD Fifth Ward's insurers, may be ultimately responsible for that conduct.").

### 1.2 Procedural Background

On October 7, 2021, Barclay filed a Third Amended Complaint, which made minor changes to the original complaint based on the Court's order. ECF No. 58. On October 28, 2021, Hydrite filed a counterclaim against Barclay, crossclaims against PPG, Lumimove, and WCC, and a third-party complaint against the MD Defendants, which sought contribution costs and declaratory relief. ECF Nos. 61, 62. PPG, in turn, filed a counterclaim against Barclay, crossclaims against Hydrite, Lumimove, and WCC, and a third-party complaint against the MD Defendants seeking contribution costs and declaratory relief, ECF Nos. 63, 69. Not to be outdone, Lumimove also filed counterclaims against Barclay. ECF No. 79.

On January 11, 2022, Barclay and the MD Defendants filed a joint motion to dismiss Hydrite's and PPG's third-party complaints against MD Fifth Ward and Denesha. ECF No. 81. Hydrite and PPG vigorously opposed the motion, which is now fully briefed. For the reasons explained below, the Court will deny the joint motion to dismiss and permit Hydrite and PPG's third-party claims for contribution to proceed against the MD Defendants.

### 2. ANALYSIS

### 2.1 Standing

A plaintiff's standing "often turns on the nature and source of the claim asserted." *Warth v. Seldin*, 422 U.S. 490, 500 (1975) (citations and

quotations omitted). "The actual or threatened injury required by [Article] III may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing." *Id*. In this case, the relevant CERCLA provision explains that "[a]ny person may seek contribution from any other person who is liable or potentially liable under section 9607(a) of this title, during or following any civil action under . . . section 9607(a) of this title." 42 U.S.C. § 9613(f)(1); *NCR Corp. v. George A. Whiting Paper Co.*, 768 F.3d 682, 691 (7th Cir. 2014) (explaining that a party that has been deemed, or may be deemed, liable for response costs in a § 9607(a) lawsuit may bring a § 9613(f) lawsuit for contribution costs against other potentially responsible people).

Hydrite and PPG are engaged in a lawsuit that Barclay initiated pursuant to § 9607(a); they are thus potentially responsible for the cost of the Property's cleanup. Barclay contracted to release its claims against the MD Defendants, a set of other potentially responsible parties. The statute makes clear that Hydrite and PPG have standing to bring a claim for contribution against "any other person who is liable or potentially liable" under CERCLA "during or after the lawsuit." 42 U.S.C. § 9613(f)(1). Thus, the Court finds that Hydrite and PPG have standing to bring a claim for contribution against the MD Defendants even though their own liability for response costs has not been established.

### 2.2 PPG and Hydrite's Contribution Claims

Barclay's private settlement with the MD Defendants does not preclude PPG and Hydrite's claims for contribution. While CERCLA envisions contribution bars, they only apply when a party "has resolved its liability to the United States or a State in an administrative or judicially approved settlement." 42 U.S.C. § 9613(f)(2). Although "the text of CERCLA is silent as to whether claims for contribution are barred when private

parties settle with other private parties," some courts have been willing to apply a contribution bar to parties who enter private settlements that are fair and judicially approved, in light of CERCLA's policy in favor of encouraging environmental clean-up. *U.S. v. SCA Servs. of Ind., Inc.*, 827 F. Supp. 526, 531 (N.D. Ind. 1993); *Lusher Site Remediation Grp. v. HMS Elkhart, LLC*, No. 3:18-cv-506, 2021 WL 5356105, at *3 (N.D. Ind. Nov. 16, 2021) ("Courts must approve of a private settlement prior to granting a bar on contribution claims."); *United States v. Fort James Operating Co.*, 313 F. Supp. 2d 902, 911 (E.D. Wis. 2004) (evaluating a proposed settlement as "consistent with the statutory goals of CERCLA"). These courts consider whether the private "settlement is (1) fair and adequate; (2) reasonable; and (3) faithful to the objectives of CERCLA." *Lusher*, 2021 WL 5356105, at *3 (citation omitted).

In this case, Barclay entered into a private settlement with two other private defendants, which, on the face of the CERCLA statute, does not trigger the contribution bar. 42 U.S.C. § 9613(f)(2) (explaining that a contribution bar applies when a person "resolved its liability to the United States or a State . . . ."). Even if the Court were to follow the courts that apply a contribution bar to judicially-approved private settlements, a bar still would not apply to Barclay's settlement, which has had no oversight from the Court and has not been subject to the Court's determination of its fairness, adequacy, reasonableness, and faithfulness to the clean-up objectives of CERCLA. *See id.* (requiring settlements to be "administrative or judicially approved"); *Lusher*, 2021 WL 5356105, at *3. Indeed, it appears that Barclay did not receive any actual contribution costs in exchange for releasing its claims against the MD Defendants; rather, it received any claims that the MD Defendants may have against their insurers. While this

course of action may streamline litigation efforts, the Court cannot say with any confidence that the settlement furthers CERCLA's objectives to expedite or ensure clean-up. *C.f. Lusher*, 2021 WL 5356105, at *3 (approving a settlement that applied only to a consent decree embodying an interim remedy, did not apply to other contaminated sites or future costs, and required a settling defendant to promptly pay $350,000 to the plaintiff).

Barclay's argument that it will indemnify the MD Defendants for their contribution claims under *Pierringer v. Hoger*, 124 N.W.2d 106 (Wis. 1963) is not convincing. A so-called "*Pierringer* release" is an agreement in which "a tort plaintiff settles with a tortfeasor, reserves its right to pursue claims against other joint tortfeasors, and agrees to indemnify the settling tortfeasor for any claims for contribution that non-settling tortfeasors might bring against the settling tortfeasor." *Burton v. E.I. du Pont de Nemours and Co., Inc.*, 994 F.3d 791, 809–10 (7th Cir. 2021) (emphasis added) (quoting *Bruner Corp. v. R.A. Bruner Co.*, 133 F.3d 491, 494 (7th Cir. 1998); *Pierringer*, 124 N.W.2d at 111).

CERCLA is a strict liability statute that is designed to (1) facilitate the cleanup or control of contamination, and (2) to shift the costs of cleanup to the parties responsible for the contamination. *Metro. Water Reclamation Dist. of Greater Chi. v. N. Am. Galvanizing & Coatings, Inc.*, 473 F.3d 824, 827 (7th Cir. 2007); *see also Allied Corp. v. ACME Solvent Reclaiming, Inc.*, 771 F. Supp. 219, 222–23 (N.D. Ill. 1990) (applying a contribution bar to parties' private settlements after finding that such a bar "outweighs the prejudice . . . on non-settling defendants" and opting for a comparative fault rule of damages given the strict liability nature of the action). Accordingly, tort principles, such as those embraced by a *Pierringer* release, "are not clearly applicable to [a] CERCLA" claim or settlement. *See Cos. for Fair Allocation v.*

*Axil Corp*, 853 F. Supp. 575, 581 (D. Conn. 1994) (rejecting an argument that plaintiffs "must allege liability before they may seek contribution" as one "derived from common law tort principles, which are not clearly applicable to CERCLA."). Indeed, Barclay has pointed to no precedent where *Pierringer* releases were applied to CERCLA claims. *C.f. Eden Stone Co. v. Oakfield Stone Co.*, 479 N.W.2d 557, 563–64 (Wis. Ct. App. 1991) (noting that there was "nothing in the *Pierringer* decision which envisions the use of such releases in any other setting" and declining to apply the *Pierringer* release to a contract matter).

The Court cannot find that Barclay's settlement with the MD Defendants operates as a *Pierringer* release that is sufficient to insulate the co-defendants from any contribution claims that they may have. Indeed, it appears that Barclay's proposed course of action would place it in a very conflicted position vis-à-vis recovering appropriate funds for a CERCLA clean up. As PPG and Hydrite point out, Barclay has agreed to defend and indemnify the MD Defendants, which gives Barclay an incentive to seek the lowest amount from the MD Defendants as possible—even if, it turned out, the MD Defendants were liable for a rather large share of the necessary response costs. Accordingly, Hydrite and PPG may maintain their third-party actions against the MD Defendants and may serve discovery on them to prove up their contribution claims.

### 3. MOTION TO COMPEL

On March 30, 2022, PPG filed a motion to compel emails from Barclay's president, George Sherman ("Sherman"), and the regional manager for the Property, Mike Walsko ("Walsko"). According to PPG, Barclay refused to even search for emails from these individuals, despite the fact that Barclay identified them as having unique and discoverable

Page 10 of 13
Case 2:20-cv-01694-JPS   Filed 05/25/22   Page 10 of 13   Document 93

information in the initial disclosures. ECF No. 91. Sherman is the only person with knowledge of the Property's acquisition; Walsko is the only person with knowledge of the Property's management and security. *Id.* at 1–2. Barclay, on the other hand, explains that it is reviewing documents and will produce responsive emails after confirming confidentiality and privilege designations. ECF No. 92. Barclay thus contends that the motion is premature. However, Barclay also argues that, notwithstanding its initial disclosures, Sherman and Walsko's email accounts are "unlikely" to have information that is unique and relevant to the case, that the request is disproportional and burdensome, that PPG did not adequately meet and confer, and so on.

The Court has little patience for discovery squabbles like this. Federal Rule of Civil Procedure 26(c) makes clear that discovery is a broad proposition: "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" The motion to compel is granted; Barclay must conduct a search of the emails and turn over all emails from Sherman and Walsko during the pertinent period that are nonprivileged and relevant to this cost-recovery action. The motion for costs and fees is denied.

4.  **LUMIMOVE'S SETTLEMENT**

Amidst this motion practice, Barclay and Lumimove filed a stipulation of dismissal of Barclay's claims against Lumimove with prejudice and without costs under Federal Rule of Civil Procedure 41(a), requesting an order from the Court dismissing Lumimove from this action. ECF No. 85. Hydrite filed a response to this stipulation to explain it did not oppose the Court's dismissal of *Barclay's* claims against Lumimove, but Hydrite noted that Lumimove should not be dismissed from the *action*

given Hydrite's crossclaims against Lumimove. ECF No. 88. Hydrite also asked the Court to clarify that any dismissal would have no bearing on Hydrite's right to contribution from Lumimove in the CERCLA claims. *Id.* Barclay, in turn, filed a motion for leave to reply, and responded that, under Wisconsin law, the settlements "obviate the need for any non-settling defendant to plead or otherwise assert any contribution claims against any settling-and-dismissed parties." ECF Nos. 89, 89-1 at 2.[2] PPG echoed Hydrite's concerns and expressed frustration that Lumimove and Barclay sought to dismiss Lumimove from the action without concern for PPG's crossclaims against Lumimove. ECF No. 90.

As the Court's discussion above makes clear, Barclay may settle with whomever it chooses. It may even, as part of a settlement, agree to indemnify those settling defendants against any contribution claims brought by other defendants, as Barclay did with the MD Defendants. But without Court approval, Barclay's private settlements are only binding on the parties involved, which, here, do not include PPG or Hydrite. Accordingly, the Court will dismiss Barclay's claims against Lumimove, but Lumimove will remain in the case because Hydrite and PPG have each filed crossclaims for contribution against it. *See* ECF No. 61, 63.

Accordingly,

**IT IS ORDERED** that the joint motion to dismiss third party complaints, ECF No. 81, be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that Barclay's motion for leave to file a reply, ECF No. 89, be and the same is hereby **GRANTED**;

---

[2] Because the Court has considered Barclay's arguments in the reply brief, Barclay's motion for leave to file a reply brief, ECF No. 89, will be granted.

**IT IS FURTHER ORDERED** that PPG's motion to compel, ECF No. 91, be and the same is hereby **GRANTED**, but the request for attorneys' fees is **DENIED**; and

**IT IS FURTHER ORDERED** that the stipulation for dismissal, ECF No. 85, be and the same is hereby **ADOPTED** as stated herein; Barclay Lofts LLC's claims against Lumimove, Inc., ECF No. 58, are **DISMISSED** and Lumimove, Inc.'s counterclaim against Barclay Lofts LLC, ECF No. 79, be and the same is hereby **DISMISSED**; however, Lumimove, Inc. remains in the case as a crossclaim defendant for Hydrite Chemical Co. and PPG Industries, Inc.'s claims.

Dated at Milwaukee, Wisconsin, this 25th day of May, 2022.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge