# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

BARCLAY LOFTS LLC,

    Plaintiff,

    v.                                              Case No. 20-CV-1694

PPG INDUSTRIES, INC. et al.,

    Defendants.

## DECISION AND ORDER ON HYDRITE'S AND PPG'S MOTIONS FOR LEAVE TO JOIN AND FILE THIRD-PARTY COMPLAINTS AGAINST SHERMAN ASSOCIATES

    Barclay Lofts LLC ("Barclay") pursues claims against PPG Industries, Inc. ("PPG") and Hydrite Chemical Co. ("Hydrite") under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9607(a) and the Resources Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6972(a). (Third Am. Compl., Docket # 58.) Barclay alleges that Hydrite and PPG caused or are responsible for the release of contaminants at the relevant properties as articulated in the Third Amended Complaint and seek to hold Hydrite and PPG responsible for Barclay's costs of cleaning up and redeveloping the properties. (*Id.*) Both Hydrite and PPG counterclaim against Barclay, arguing for contribution under CERCLA to the extent any costs Barclay incurred are attributable to Barclay. (Hydrite Counterclaims ¶¶ 41–77, Docket # 61; PPG Counterclaims ¶¶ 15–23, Docket # 63.) Both Hydrite and PPG now move for leave to join and file a third-party complaint against Sherman Associates, Barclay's parent company, pursuant to Fed. R. Civ. P. 14. (Docket # 187 and Docket # 196.) Both parties seek to bring claims against Sherman

for contribution under CERCLA § 113 and for CERCLA declaratory relief. (Hydrite Third-Party Compl., Docket # 187-1; PPG Third-Party Compl., Docket # 196-1.) They argue that Sherman is the real party in interest in this case and may be independently liable under CERCLA as a direct operator. (Hydrite's Br. at 1, Docket # 192; PPG's Mot. to Join at 1, Docket # 196.) For the reasons explained below, Hydrite's and PPG's motions are granted.

## RELEVANT FACTUAL BACKGROUND

In 2013, Sherman and MD Fifth Ward executed a purchase agreement for the properties at issue in this case. (Declaration of James E. Goldschmidt ("Goldschmidt Decl.") ¶ 6, Ex. F, Docket # 193-4.) Sherman engaged KEY Engineering in 2015 to conduct various tests at the properties. (Barclay Br. at 1, ¶ 3, Docket # 199.) Shortly before the sale of the properties closed, Sherman assigned its rights to buy the properties to PPG GP LLC, an entity Sherman formed to be a member of Barclay. (Goldschmidt Decl. ¶ 13, Ex. L; Goldschmidt Decl. ¶ 4, Ex. C, Deposition of George Sherman ("Sherman Dep.") at 28.) The parties closed on the sale of the properties in 2017. (Hydrite Br. at 4, Docket # 192.) Barclay was created in 2018. (Goldschmidt Decl. ¶ 29, Ex. BB.)

George Sherman, the current CEO of Sherman Associates, testified that Barclay Lofts LLC is "a limited liability corporation whose initial business purpose was to redevelop Barclay – a property on Barclay Avenue . . . A single purpose entity." (Sherman Dep. at 25.) Sherman Associates is a member of the Barclay Lofts LLC. (*Id.* at 28.) Sherman is Barclay's parent corporation. (Barclay Br. at 1, ¶ 1, Docket # 199.)

PPG GP LLC subsequently assigned its rights to Barclay and Barclay became the owner of the properties. (Goldschmidt Decl. ¶¶ 14, 15, Exs. M, N.) Barclay has no employees and engages Sherman's development and management branches for development services

2

and operations services. (Barclay Br. at 1, ¶ 2, Docket # 199.) Barclay's pre-remediation costs to date are over $1.5 million, excluding attorneys' fees and costs and Sherman has paid expenses on Barclay's behalf associated with these activities. (*Id.* ¶ 4.) George Sherman testified that he had no reason to believe that Barclay wrote any checks and he believed all payments were written by Sherman Associates. (Sherman Dep. at 289.) Sherman testified that he did not believe Barclay had its own, separate checking account. (*Id.* at 290.) Sherman Associates has assigned Barclay any right that Sherman may have had to recover costs paid on Barclay's behalf in this litigation. (Barclay Br. at 3, ¶ 9.)

## LEGAL STANDARD

Fed. R. Civ. P. 14(a)(1) provides that a defendant party may, as a third-party plaintiff, serve a summons and complaint on a non-party who is or may be liable to it for all or part of the claim against it. *Id.* However, the third-party plaintiff must obtain the court's leave to file its third-party complaint more than fourteen days after serving its original answer. *Id.* "The general purpose of Rule 14 is to avoid circuity of actions and to expedite the resolution of secondary actions arising out of or in consequence of the action originally instituted." *Crude Crew v. McGinnis & Assocs., Inc.*, 572 F. Supp. 103, 109 (E.D. Wis. 1983). A motion for leave to file a third-party complaint is addressed to the sound discretion of the trial court. *Id.*

In determining whether impleader is appropriate, the district court must balance the benefits of the liberal third-party practice against possible prejudice to the plaintiffs and the third-party defendants, the complication of issues at trial, the merit of the third-party complaint, and any additional expense that would be incurred by the parties. *Id.* "As long as a third-party action falls within the general contours limned by Rule 14(a), does not contravene customary jurisdictional and venue requirements, and will not work unfair

3

prejudice, a district court should not preclude its prosecution." *Marseilles Hydro Power, LLC v. Marseilles Land & Water Co.*, 299 F.3d 643, 650 (7th Cir. 2002) (internal quotation and citation omitted).

## ANALYSIS

Both Hydrite and PPG seek leave to implead Sherman into this action, arguing that Sherman is the real party in interest in this case and that Sherman may also be liable as an operator under CERCLA. Defendants argue that their motions are a timely response to new information recently learned about Sherman's role in the case. (Hydrite Br., Docket # 192.) Barclay argues that the defendants' motions are "untimely in the extreme" as both parties were aware of Sherman "for almost three years" and had the means of discovering Sherman's role as Barclay's agent for at least two years. (Barclay Br. at 4–5.) Barclay further argues that Sherman is not a real party in interest in this case because Barclay is the sole owner of the properties and thus Barclay, as owner, may allege CERCLA claims. (*Id.* at 7–8.) Barclay also argues that although Sherman paid for certain pre-remediation costs on Barclay's behalf that Barclay now seeks to recover in this action, Sherman assigned Barclay its rights to recovery, as it is legally allowed to do. (*Id.*) Finally, Barclay argues that defendants' claims that Sherman may be liable as an operator under CERCLA fail as a matter of law. (*Id.* at 11–16.) Finally, Barclay argues that joining Sherman to this lawsuit would add complication and cost. (*Id.* at 17–18.)

1. *Timeliness*

Barclay argues defendants' motions to implead Sherman are "untimely in the extreme" as both defendants have been aware of Sherman and its role as Barclay's agent for years now. Rule 14 governs third-party actions and provides that a third-party plaintiff must

4

obtain the court's leave to file a third-party complaint more than 14 days after serving its original answer, Fed. R. Civ. P. 14(a)(1), and the decision whether to permit a third-party complaint is within the sound discretion of the trial court, based on the timeliness of the motion and reasons for delay, *Highlands Ins. Co. v. Lewis Rail Serv. Co.*, 10 F.3d 1247, 1251 (7th Cir. 1993). Once again, Barclay argues that defendants have known about Sherman for almost three years and were in possession of "ample and extensive documentation to understand Sherman Associates' role as an agent for Barclay for at least two years." (Barclay Br. at 5.) Defendants do not contend that they were unaware of the *existence* of Sherman and its status as Barclay's parent company since the case's inception; they argue that they were unaware of the full extent of Sherman's role or the details of its relation to Barclay until recent depositions beginning in March 2023. (Hydrite Br. at 4–5.)

Specifically, George Sherman, the CEO of Sherman Associates, was deposed on March 20, 2023. (Goldschmidt Decl., Ex. C.) Defendants contend that it was through Sherman's deposition that they first learned that Barclay "only exists on paper." (Hydrite Br. at 5.) Sherman testified that Barclay is a "single purpose entity" that was created to redevelop the Barclay Avenue property. (Sherman Dep. at 25.) Sherman testified that Barclay has no employees (*id.* at 27) and that he did not believe Barclay had a checking account separate from Sherman (*id.* at 290). Chris Sherman, Sherman Associates' president, was deposed on May 18, 2023. (Goldschmidt Decl. ¶ 16, Ex. O, Deposition of Chris Sherman ("Sherman Dep."), Docket # 189-15.) He testified that Barclay engages Sherman's development and management entities for its operations at the subject properties. (*Id.* at 22.) Defendants argue that subsequent to these depositions, they quickly propounded discovery requests on Barclay that confirmed George Sherman's testimony that Barclay has not paid any response costs,

that Barclay's itemized list of "response costs" was created solely by Sherman personnel, that Barclay has no board of directors, and that its three officers are all Sherman officers. (Hydrite Br. at 5–6.) Barclay's discovery responses were signed on September 25, 2023. (Declaration of Lauren Zenk ¶ 2, Ex. A, Docket # 202-1.)

While Barclay contends that the defendants knew about Sherman for three years and had the means to discover that Sherman was Barclay's "agent" for at least two years, Barclay does not dispute the defendants' contention that they were unaware that Barclay was a "single purpose entity" until, at the earliest, George Sherman was deposed in March 2023. There is a difference between knowledge that Sherman is Barclay's parent company and knowledge that Barclay is a "single purpose entity" with no employees or bank accounts independent of Sherman. And because George Sherman was unclear about several facts, testifying, for example, that he did not know whether Barclay had a board of directors, (Sherman Dep. at 26), defendants followed-up with written discovery to confirm before moving to implead Sherman. On these facts, I find the defendants acted timely in pursuing their third-party complaints based on when they learned this new information and the due diligence of confirming the information through written discovery requests. Thus, I do not find the motions untimely.

    2.    *Real Party in Interest*

Defendants further argue that based on the information learned about Barclay's status as a "single purpose entity," Sherman is the real party in interest in this case and must be impleaded. Barclay argues that it, not Sherman, owns the properties at issue and that any pre-remediation costs Sherman paid on Barclay's behalf are now Barclay's to pursue in this action

6

Case 2:20-cv-01694-NJ    Filed 10/24/23    Page 6 of 12    Document 204

as Sherman assigned Barclay all of its rights to recover these costs. (Barclay Br. at 7–8.) Barclay further argues that:

> If and to the extent that the Court were to hold that Sherman Associates should bear *one iota* of responsibility, Barclay hereby affirmatively waives any right to recover from Defendants any responsibility that the Court might ultimately allocate to Sherman Associates. In the alternative, Barclay hereby affirmatively permits the Court to assign to Barclay any amount of responsibility for activities undertaken by its agent, Sherman Associates.

(*Id.* at 10.) Barclay argues that given this concession, "there is no possibility of derivative liability that could support a third-party complaint against Sherman Associates" and "[t]o the extent any such claim ever existed, it is now moot." (*Id.* at 10–11.)

At bottom, it seems the defendants are less concerned with seeking contribution from Sherman should Sherman be found responsible, and more concerned that they have counterclaims against Barclay and if Barclay is allocated any share of costs at trial, it will not actually be able to fund them. (Hydrite Br. at 11–12.) Barclay contends that this argument is speculative and defendants provide no explanation for why Barclay would be unable to fund any expenses on its own or why Sherman would be required as a legal or practical matter to provide funds to Barclay in the future. (Barclay Br. at 16–17.) But the defendants *have* provided an explanation as to why they are at least reasonably concerned that Barclay will be unable to fund any expenses on its own—defendants learned through discovery that Barclay exists on paper only and appears to have no funds. And Barclay is correct that it is unclear whether Sherman would be practically or legally required to provide funds to Barclay. After all, while Sherman Associates is a member of Barclay, "a limited liability company . . . is a separate legal entity from its members, just like a corporation is a separate legal entity from its shareholders." *See Scruggs v. Wauwatosa Sav. Bank*, No. 17-C-0157, 2017 WL 4326514, at *3 (E.D. Wis. Sept. 28, 2017) (citing *Spitz v. Proven Winners N. Am., LLC*, 759 F.3d 724, 730

7

(7th Cir. 2014)). But once again, defendants learned through discovery that it at least appears as though Sherman has been footing Barclay's bills all along. Under these circumstances, defendants' fears are understandable—they do not want to find themselves in a situation where Barclay is liable for some portion of the cleanup costs and then throws up its hands and says it has no money to fund them. And Barclay is not helping to clear up this entanglement. On one hand, Barclay offers to have the Court assign Sherman's share of responsibility (if any) to Barclay, while on the other hand asserting that Sherman is under no obligation to fund Barclay's costs. But given it appears Barclay has no money independent of Sherman, Barclay's offer of assignment understandably rings hallow to defendants. Thus, under these facts, it appears that Sherman "may be liable" to defendants for all or part of the claims against it for purposes of Rule 14 and it would increase efficiency to give Sherman itself a seat at the table in this litigation.

    3.    *Sherman's Alleged Liability as an Operator*

The defendants argue that Sherman may also be liable as an operator under CERCLA and thus defendants should be permitted to bring a third-party complaint against it. (Hydrite Br. at 12–18.) Liability is established under CERCLA § 107(a) if: (1) the site in question is a "facility" as defined in § 101(9); (2) the defendant is a responsible person under § 107(a); (3) a release or a threatened release of a hazardous substance has occurred; and (4) the release or the threatened release has caused the plaintiff to incur response costs. *Kerr-McGee Chem. Corp. v. Lefton Iron & Metal Co.*, 14 F.3d 321, 325 (7th Cir. 1994). Section 9607 provides that "any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of," may be liable, 42 U.S.C. § 9607, and the Supreme Court has defined "operator" as "someone who directs the workings of,

manages, or conducts the affairs of a facility . . . . An operator must manage, direct, or conduct operations specifically related to pollution, that is, operations having to do with the leakage or disposal of hazardous waste, or decisions about compliance with environmental regulations," *United States v. Bestfoods*, 524 U.S. 51, 66–67 (1998).

In both Hydrite's and PPG's proposed Third-Party Complaints, they allege that Sherman is a current, direct operator of the subject properties; was an operator of the properties at the time of the disposal of hazardous substances; and/or was an arranger for the disposal of hazardous substances at the properties. (Docket # 187-1 at ¶ 72; Docket # 196-1 at ¶ 77.) The defendants allege that Sherman engaged KEY Engineering to investigate possible contamination at the properties and that KEY's actions (controlled and directed by Sherman) exacerbated the contamination at the properties. (*Id.* ¶¶ 29–32; Docket # 196-1 at ¶¶ 32–35.) The defendants allege that Sherman has failed to adequately secure the properties at issue and fix structural concerns including an open roof on Building 35 that is causing rainwater to continuously permeate the building's structure and accumulate on its floor, creating a pool of contaminated water that is draining through to the ground. (*Id.* ¶¶ 53–55; Docket # 196-1 at ¶¶ 57–59.)

Barclay argues that the defendants' proposed third-party complaints fail to state a claim against Sherman because the complaints merely allege that Sherman failed to act by not undertaking certain repairs and security measures and that failing to act does not fall under the ambit of managing, directing, or conducting operations specifically related to pollution. (Barclay Br. at 12.) Barclay further argues that the defendants have not alleged that Sherman was directly and personally engaged in any decisions to not act. (*Id.*) Barclay argues that

9

defendants' allegations that KEY Engineering's actions contributed to contamination at the properties is highly speculative and implausible. (*Id.* at 13–15.)

The defendants argue that they are not required to prove their case at the pleading stage and that the third-party complaints sufficiently allege the four elements of a CERCLA claim. (Hydrite Reply Br. at 7–8, Docket # 201.) Defendants argue that Barclay did not even exist until 2018 (Goldschmidt Decl. ¶ 29, Ex. BB); thus, for at least part of the relevant time frame, Sherman allegedly managed operations having to do with leakage or disposal of contaminants (*id.* at 8).

While Barclay argues that "inaction is not action" and thus Sherman cannot legally be held liable under the facts as alleged in the third-party complaints, Sherman cites no binding authority to support this proposition. (Barclay Br. at 12.) Rather, the Supreme Court has stated that an "operator" must "manage, direct, or conduct operations specifically related to pollution, that is, operations having to do with the leakage or disposal of hazardous waste, or decisions about compliance with environmental regulations." *Bestfoods*, 524 U.S. at 66–67. The third-party complaints allege that Sherman directed the work of KEY Engineering and that the destructive testing performed by the company disrupted, shifted, and exacerbated the contamination and further alleges that Sherman controls the maintenance (or lack thereof) of Building 35 that is causing further groundwater contamination. This is not a situation where the complaint alleges that Sherman directs only the general operations of the properties or specific operations unrelated to pollution, *see, e.g.*, *Browning-Ferris Indus. of Illinois, Inc. v. Ter Maat*, 195 F.3d 953, 956 (7th Cir. 1999), but the third-party complaints allege that Sherman is supervising the specific operations that is either causing or exacerbating the contamination.

Thus, I find that the third-party complaints sufficiently state a CERCLA claim and thus do not present a sufficient ground to deny defendants' motions.

    4.    *Increased Cost and Complication*

Finally, Barclay argues that adding Sherman at this late-stage prejudices Barclay as it will cause additional complications and costs. (Barclay Br. at 17.) For example, Barclay argues that Hydrite has forecasted that it will disclose an additional expert opinion regarding whether Sherman's activities exacerbated the contamination. (*Id.*) Barclay is concerned that adding Sherman will potentially create more expensive, time-consuming, and needless motion practice from defendants. (*Id.* at 17–18.)

While a bench trial is scheduled in this Court on January 22, 2024, approximately three months away, I do not find the addition of Sherman as a party will jeopardize scheduling in this matter. Expert discovery does not close until December 8, 2023 (Docket # 181) and the defendants do not propose any further discovery beyond adding an expert regarding Sherman (Hydrite Br. at 7). Because Barclay has no employees and its only officers are Sherman officers who have been deposed, it is unlikely that substantial additional fact discovery will be necessary or requested. Furthermore, the deadline for dispositive motions has passed, so it is unclear what needless motion practice Barclay foresees. To the extent the parties wish to challenge defendants' expert regarding Sherman's responsibility, *Daubert* motions are not due until January 5, 2024. (Docket # 181.) Thus, I am unconvinced that adding Sherman as a party, especially given Sherman's apparent involvement behind the scenes in the case to date, will unduly prejudice Barclay. For all of these reasons, the defendants' motions for leave to file third-party complaints are granted.

11

## CONCLUSION

Defendants Hydrite and PPG move to file third-party complaints against Sherman pursuant to Fed. R. Civ. P. 14. Plaintiff Barclay objects to the defendants' motions, arguing that the requests are untimely, that the third-party complaints fail to state a claim, and that the addition of Sherman will unduly prejudice Barclay. The Seventh Circuit has instructed that so long as a third-party action falls within the general contours of Rule 14, does not contravene jurisdictional and venue requirements, and does not work unfair prejudice, "a district court should not preclude its prosecution." *Marseilles Hydro Power, LLC*, 299 F.3d at 650. For the reasons explained above, Hydrite and PPG are granted leave to file their third-party complaints against Sherman.

## ORDER

**NOW, THEREFORE, IS IT HEREBY ORDERED** that Hydrite's Motion for Leave to File a Third-Party Complaint (Docket # 187) is **GRANTED**.

**IT IS FURTHER ORDERED** that PPG's Motion for Leave to Join Hydrite's Motion and File a Third-Party Complaint (Docket # 196) is **GRANTED**.

**FINALLY, IT IS ORDERED** that Hydrite's Motion to Seal (Docket # 191) is **GRANTED**.

Dated at Milwaukee, Wisconsin this 24th day of October, 2023.

BY THE COURT:

/s/ Nancy Joseph

NANCY JOSEPH
United States Magistrate Judge