# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**BARCLAY LOFTS LLC,**

   Plaintiff,

   v.                                  Case No. 20-CV-1694

**PPG INDUSTRIES, INC. et al.,**

   Defendants.

## DECISION AND ORDER ON BARCLAY'S AND SHERMAN'S RULE 59 MOTIONS

      Barclay Lofts, LLC sued PPG Industries, Inc. and Hydrite Chemical Co. seeking the recovery of response costs, damages, declaratory relief, and injunctive relief under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9601, *et seq.* and the Resources Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6901, *et seq.* PPG counterclaimed against Barclay and Sherman Associates, Inc. for contribution and declaratory relief under CERCLA, and cross-claimed against Hydrite and Lumimove for CERCLA contribution. Hydrite cross-claimed against PPG for CERCLA contribution. A trial to the Court was held in this case from January 22, 2024 to February 2, 2024.

      On September 18, 2024, the Court issued its decision and order following the Court Trial, entering findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52. (Docket # 333.) Barclay and Sherman now move to amend the findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 59(a)(2) and (e). (Docket # 339; Docket # 341.) For the reasons further explained below, the motions are denied.

## LEGAL STANDARD

Barclay and Sherman cite Fed. R. Civ. P. 59(a)(2) and 59(e) in support of their motions. Rule 59(a)(2) applies to a motion for a new trial: "[a]fter a nonjury trial, the court may, on motion for a new trial, open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new ones, and direct the entry of a new judgment." Whereas Rule 59(e) states that "[a] motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." Neither Barclay nor Sherman requests a new trial in this matter; thus, I will consider both motions under Fed. R. Civ. P. 59(e).

Rule 59(e) allows a party to move the court for reconsideration of a judgment within 28 days following the entry of the judgment. A motion for reconsideration serves a very limited purpose in federal civil litigation; it should be used only "to correct manifest errors of law or fact or to present newly discovered evidence." *Rothwell Cotton Co. v. Rosenthal & Co.*, 827 F.2d 246, 251 (7th Cir. 1987) (quoting *Keene Corp. v. Int'l Fidelity Ins. Co.*, 561 F. Supp. 656 (N.D. Ill. 1982), *aff'd* 736 F.2d 388 (7th Cir. 1984)). "A 'manifest error' is not demonstrated by the disappointment of the losing party. It is the 'wholesale disregard, misapplication, or failure to recognize controlling precedent.'" *Oto v. Metropolitan Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) (quoting *Sedrak v. Callahan*, 987 F. Supp. 1063, 1069 (N.D. Ill. 1997)). Apart from manifest errors of law, "reconsideration is not for rehashing previously rejected arguments." *Caisse Nationale de Credit Agricole v. CBI Industries, Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996). Whether to grant a motion for reconsideration "is left to the discretion of the district court." *Id.*

## ANALYSIS

Barclay and Sherman each challenge two aspects of the judgment. Barclay argues it should not be liable for 100% of its past response costs and that it met its burden of proof under RCRA. (Docket # 342.) Sherman argues that the Court wrongly determined it was an "operator" under CERCLA and that even if it was an "operator," its allocation of responsibility for future response costs should be 0%. (Docket # 340.) I will address each argument in turn.

1. *Barclay's Rule 59 Motion*

Again, Barclay challenges the Court's determinations that it was 100% responsible for its past response costs and that it failed to meet its burden of proof on its RCRA claim.

1.1 Past Response Costs

Barclay sued PPG for cost recovery under § 107(a) of CERCLA. PPG, in turn, brought a CERCLA contribution claim against Barclay. I found that Barclay met its burden of proving its § 107(a) claim against PPG and determined that it incurred $1,167,755.35 in necessary response costs consistent with the National Contingency Plan. (Docket # 333 at 18–35.) In considering PPG's contribution counterclaim under § 113(f), I allocated 100% of the past response costs, totaling $1,167,755.35, to Barclay. (*Id.* at 40–42.) In so finding, I concluded that Barclay had already been fully compensated for its past response costs through the reduction it received in the purchase price of the Properties and from the settlement payments it had already received. (*Id.*)

Allocation of liability is based on the application of equitable factors, commonly referred to as the "Gore Factors." *Env't Transp. Sys., Inc. v. ENSCO, Inc.*, 969 F.2d 503, 507 (7th Cir. 1992). However, the "Gore Factors" are not exhaustive and "in any given case, a

court may consider several factors, a few factors, or only one determining factor . . . depending on the totality of circumstances presented to the court." *Id.* at 509. In the decision, I found that because Barclay had not yet incurred costs for remediating the Properties, the Gore Factors were not entirely helpful in allocating costs here. (Docket # 333 at 40.) I considered that Barclay received a significant price reduction when purchasing the Properties (in the amount of $1.5 million) and that the evidence showed that the price reduction was directly related to the scope of contamination. (*Id.* at 40–41.)

The crux of Barclay's reconsideration argument is that allocating 100% of past costs to Barclay is inequitable because the future response costs are estimated in the range of $6,700,000 to $24,000,000. (Docket # 342 at 3–4.) Thus, any concern regarding a double recovery to Barclay is unfounded because there is no evidence that Barclay will ever be able to sell the Properties for a profit. (*Id.* at 4.) Barclay further argues that considering the Hydrite settlement payment is also error because the $550,000.00 Barclay received is allocated to many different past costs, including those the Court found unrecoverable under CERCLA, such as attorneys' fees. (*Id.* at 4–5.)

Barclay has not shown a manifest error of law or fact. Barclay argues the Court relied on the "unproven assumption" that it will one day be able to sell the Properties in question for a profit. (Docket # 342 at 4.) This is inaccurate. In allocating past costs, I did not speculate as to what costs may or may not be incurred in the future. Nor should I, as future response costs, not yet incurred, are not recoverable under CERCLA. (Docket # 333 at 44, quoting *Santa Clarita Valley Water Agency v. Whittaker Corp.*, 99 F.4th 458, 483 (9th Cir. 2024).) Nor did I consider whether Barclay will eventually be able to sell the Properties for a profit. Rather, I considered the fact that of the past costs Barclay already incurred that were recoverable

4

under CERCLA, it had already recovered an amount exceeding those costs through the substantial discount it received on the Properties and the settlement funds. Barclay does not contend that either of these factors are legally improper to consider in the equitable allocation. That Barclay disagrees with the analysis is not a basis to alter the judgment. Thus, Barclay's motion to alter the judgment as to the allocation of past costs is denied.

### 1.2 RCRA Claim

Barclay also brought an endangerment action under RCRA, 42 U.S.C. § 6972(a)(1)(B), against PPG. To succeed on a RCRA claim, a plaintiff must show that: (1) the defendant has generated solid or hazardous waste; (2) the defendant is contributing to or has contributed to the handling of this waste; and (3) this waste may present an imminent and substantial danger to health or the environment. *Liebhart v. SPX Corp.*, 917 F.3d 952, 958 (7th Cir. 2019). PPG argued that Barclay failed to meet its burden of proof as to the third element of its RCRA claim, i.e., that the contaminants present an imminent and substantial danger to health or the environment. I determined that based on the evidence presented at trial, Barclay failed to meet its burden of proving imminent and substantial endangerment. (Docket # 333 at 72.) In so finding, I considered that despite the undisputed evidence that contaminants at unsafe levels are present on the Properties, Barclay offered only speculation as to the immediate risk to human health and/or the environment. (*Id.* at 73.) I found that the evidence adduced at trial showed the potential risk of harm to *future* occupants of the buildings, and even that risk remained undetermined. (*Id.*)

Barclay argues that its RCRA claim was denied because it failed to provide activity-based sampling. (Docket # 342 at 7–8.) This is inaccurate. I found that to the extent Barclay provided evidence of harm to human health, the risk of harm was to future occupants of the

5

Properties. And even at that, Curtis Hedman, a toxicologist and risk assessor for the Wisconsin Department of Health Services, testified that they had not finished assessing the risk. Thus, I concluded that even the risk to future occupants remains undetermined. (Docket # 333 at 73.) There was no finding that activity-based sampling was required to succeed on the RCRA claim. Barclay also reiterates its argument that people continue to trespass on the Properties despite its security efforts. (Docket # 342 at 10–11.) But this argument was already raised and rejected in the decision. (Docket # 333 at 74.) Reconsideration is not the appropriate place to rehash previously rejected arguments. *See Caisse Nationale de Credit Agricole*, 90 F.3d at 1270. While Barclay disagrees with my conclusion that it failed to meet its burden of proof on the RCRA claim, it has not shown a manifest error of law or fact. Reconsideration is not warranted under Rule 59(e) on either the allocation of past costs or on the RCRA claim. Barclay's motion is denied.

  2. *Sherman's Rule 59 Motion*

Sherman argues that the Court wrongly determined it was an "operator" under CERCLA and that even if it was an "operator," its allocation of responsibility for future response costs should be 0%.

    2.1 Whether Sherman is an Operator Under CERCLA

PPG filed a third-party complaint against Sherman for both contribution under CERCLA § 113(f)(1) and for a declaratory judgment finding Sherman jointly and severally liable for response costs. To seek contribution from Sherman, PPG had to show that Sherman was a potentially responsible party. The question before me was whether Sherman was considered an "operator" under CERCLA. An "operator" under CERCLA must "manage, direct or conduct operations specifically related to pollution, that is, operations having to do

6

with 'the leakage or disposal of hazardous waste, or decisions about compliance with environmental regulations.'" *N. States Power Co. v. City of Ashland, Wis.*, 131 F. Supp. 3d 802, 823 (W.D. Wis. 2015) (quoting *United States v. Bestfoods*, 524 U.S. 51, 66–67 (1998)). I determined, based on the evidence adduced at trial, that Sherman met the definition of "operator" under CERCLA and was a potentially responsible party. (Docket # 333 at 38–39.)

Sherman's reconsideration arguments, however, merely rehash arguments previously raised and rejected at trial. Sherman disagrees with my conclusion that Sherman made decisions about compliance with environmental regulations for the Properties and the evidence cited in support of that conclusion. Sherman argues that "to impose direct operator liability on Sherman," the Court must find that "Sherman was acting in its own capacity and not as an agent of Barclay." (Docket # 340 at 4.) But that is precisely what I determined. I considered that the legal invoices for response costs Barclay now claims were billed to Sherman; Key Engineering directed its report findings to Sherman; and that the WDNR and the City of Milwaukee's Health Department directed their correspondences to Sherman, amongst other evidence. (Docket # 333 at 39.) While Sherman disagrees with that analysis and conclusion, it fails to show a manifest error of law or fact. Reconsideration is not warranted on this ground.

### 2.2 Allocation of Future Response Costs to Sherman

Finally, Sherman argues that even assuming it is an operator, the Court improperly grouped Barclay together with Sherman when allocating future response costs. (Docket # 340 at 5–7.) As stated above, contribution under CERCLA § 113(f)(1) directs courts to allocate costs between responsible parties using equitable factors. In allocating liability for future response costs, I allocated 10% liability to Barclay and Sherman. (Docket # 333 at 64–65.)

7

Sherman argues that it took no actions beyond serving as Barclay's agent. Thus, it would be inequitable to allocate any share of liability to Sherman. This is inaccurate. When a party is found liable under CERCLA, the party is jointly and severally liable for all the response costs, regardless of relative fault. (Docket # 333 at 36, citing *United States v. Cap. Tax Corp.*, 545 F.3d 525, 534 (7th Cir. 2008).) Furthermore, contrary to Sherman's assertion, I did not find Barclay and Sherman to be alter egos, as expressly stated in the decision. (*Id.* at 40.) And while Sherman contends that I failed to conduct any equitable analysis to justify the allocation decision (Docket # 348 at 6), I specifically considered the evidence presented at trial that Barclay had no employees and no bank account of its own. (Docket # 333 at 39.) A liable party's financial resources is a proper factor to consider when allocating liability. (Docket # 333 at 38, citing *United States v. Davis*, 31 F. Supp. 2d 45, 63 (D.R.I. 1998), *aff'd*, 261 F.3d 1 (1st Cir. 2001).)

The evidence demonstrates that Sherman is the pocketbook for both companies. It is unclear how CERCLA's purposes will be realized by allocating liability to a party with no money when in reality, Sherman is responsible for paying all of the bills. (*Id.* at 39.) Sherman argues that the Court "must clarify the statements in the Order regarding Barclay's and Sherman's respective liability for future costs going forward to avoid confusion." (Docket # 340 at 7.) It is unclear how there will be confusion moving forward. Whether Barclay or Sherman incurs the costs, the evidence shows that Sherman pays the bill.

Again, while Sherman disagrees with my allocation analysis, it fails to show a manifest error of fact or law. Reconsideration is not warranted under Rule 59(e). Sherman's motion is denied.

**ORDER**

**NOW, THEREFORE, IT IS ORDERED** that Sherman Associates' Motion to Alter Judgment (Docket # 339) and Barclay's Motion to Alter Judgment (Docket # 341) are **DENIED**.

Dated at Milwaukee, Wisconsin this 28th day of January, 2025.

BY THE COURT:

_____
NANCY JOSEPH
United States Magistrate Judge